# IN THE COURT OF APPEALS OF IOWA

No. 17-1101
Filed October 11, 2017

**IN THE INTEREST OF J.H., K.H., and K.A.,**
**Minor Children,**

**J.L., Father of K.A.,**
        Appellant,

**A.A., Mother,**
        Appellant,

**K.H., Father of J.H. and K.H.,**
        Appellant.
_____

        Appeal from the Iowa District Court for Wright County, Paul B. Ahlers, District Associate Judge.


        Parents appeal from an order terminating their respective rights in their children pursuant to Iowa Code chapter 232 (2017).  **AFFIRMED ON ALL APPEALS.**

        Justin J. Kroona of Kroona Law Office, Webster City, for appellant father J.L.

        Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, P.L.C., Clarion, for appellant mother.

        Douglas E. Cook of Cook Law Office, Jewell, for appellant father K.H.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General for appellee State.

        Barbara J. Westphal, Belmond, guardian ad litem for minor children.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

This case arises out of a juvenile court proceeding severing the parent-child relationship between three children and their respective parents pursuant to Iowa Code chapter 232 (2017). The mother of all three children, Annalease, and two of the three fathers, James and Kory, appeal from the order terminating their respective parental rights. On appeal, none of the parents challenge the sufficiency of the evidence supporting the statutory grounds authorizing the termination of their parental rights. All three parents do challenge whether the Iowa Department of Human Services (IDHS) made reasonable efforts to provide services facilitating reunification of the family. James, in addition to challenging reasonable efforts, requests six more months to work toward reunification. Kory, in addition to challenging reasonable efforts, contends he was prejudiced because the juvenile court judge sentenced Kory to prison on unrelated criminal matters twice during the pendency of this juvenile proceeding.

Our review of termination-of-parental-rights proceedings is de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although our review is de novo, we do afford the decision of the district court some deference for policy reasons both institutional and pragmatic. *See In re M.J.W.*, No. 17-0149, 2017 WL 2665957, at *1 (Iowa Ct. App. June 21, 2017). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *M.W.*, 876 N.W.2d at 219. Our primary consideration is the children's best interest. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

We need not recite in any great detail the facts and circumstances giving rise to this proceeding. The relevant facts and circumstances are set forth in the

juvenile court's thorough and well-reasoned order terminating parental rights. In sum, the family came to the attention of IDHS in July 2015 when Kory strangled Annalease and punched her in the stomach while she was pregnant. The two older children were removed from the home. Kory was incarcerated. When the third child, K.A., was born, she tested positive for methamphetamine. Over the life of the case, the parents have little ability and little desire to care for the children.

—Little ability because the parents have not demonstrated the capacity to care for the children. Over the life of the case each lacked stable housing and employment. Each had a long history of substance abuse, untreated mental-health conditions, and violent and criminal behavior. Each was incarcerated during the course of these proceedings. At the time of the termination hearing, Annalease was in prison for assaulting a police officer, which was her fourth conviction for assault during the pendency of this case, and James was in prison for violating the sex-offender registry. There is no evidence these parents can care for the children at issue.

--Little desire because no parent demonstrated any interest in the children. Annalease exercised few of the visitations offered and did not see the children for eight months. Kory missed significant time with his child due to his incarceration. When he was not incarcerated, he exercised only nineteen of fifty scheduled visits. James attended only six of thirty scheduled visitations with his child and disappeared for long periods of time. There is no evidence these parents have any regard for the children at issue.

With that background, we turn to the challenges raised on appeal. All parents challenge whether IDHS made reasonable efforts to work toward reunification. As part of its ultimate proof, the State must establish it made reasonable efforts to return the children to their home. *See* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [IDHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the reasonable efforts mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable-efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

The parents' challenge to the department's efforts fails. We reject the argument IDHS refused to provide visitation services to Annalease and Kory while they were incarcerated and the refusal amounted to a failure of reasonable efforts.[1] The evidence showed visitation was not allowed pursuant to some

---

[1] The right of incarcerated parents to exercise visitation with their children has a basis in both statute and case law. *See* Iowa Code § 232.107 (providing for reasonable or supervised visitation "unless the court finds that substantial evidence exists to believe that reasonable visitation or supervised visitation would cause an imminent risk to the child's life or health"); *In re R.C.*, No. 16-1131, 2016 WL 4803919, at *4–5 (Iowa Ct. App. Sept. 14, 2016); *In re K.M.*, No. 16-0795, 2016 WL 4379375, at *5–7 (Iowa Ct. App. Aug.

facility rules, Kory failed to request visitation when allowed, and the mother did, in fact, receive visitation as soon as it became possible. We also reject James's contention he was entitled to receive a written contract of expectations so he could understand what was expected of him. There is no statutory requirement a parent receive a written contract of expectations. Here, IDHS communicated expectations to James, and he admits he understood what was expected of him. A written contract was unnecessary, and the failure to provide one does not constitute the failure to provide reasonable efforts.

Other than the two aforementioned issues, none of the parents in this case requested different or additional services in the juvenile court. Their generalized challenge to the department's efforts is not preserved for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("The [IDHS] has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing."); *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting the demand for services is necessary to preserve error).

Even if error had been preserved with respect to reasonable efforts, generally, we would conclude IDHS made reasonable efforts under the circumstances presented. The following services were offered to the parents: family safety, risk, and permanency services; court-ordered supervision; anger management therapy; substance-abuse evaluations; trial home visits; relative care; parenting skills; residential treatment; outpatient substance-abuse

---

17, 2016); *In re K.L.P.*, No. 15-1371, 2015 WL 6507840, at *4–5 (Iowa Ct. App. Oct. 28, 2015); *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

treatment; drug testing; medication management; therapy; supervised visits; semi-supervised visits; family foster care; family team meetings; paternity testing; transportation; and money management.

In addition to his challenge to reasonable efforts, James contends the juvenile court should have granted a six-month stay of termination to work toward reunification with his child. Under Iowa Code section 232.104(2)(b), the court may enter an order continuing placement of the children upon a finding the need for the children's removal will no longer exist at the end of the additional six-month period. The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end the extension. Iowa Code § 232.104(2)(b). Like the juvenile court, we cannot conclude the need for removal would have abated if James had been granted an additional six months' time. First, the juvenile court already granted one extension without James making any progress toward reunification. Second, at the time of the termination hearing, the juvenile court found that James's life was a dysfunctional and chaotic mess and that James could barely care for himself, let alone a child. James's instability is salient here because K.A., the child at issue, has life-threatening medical conditions that require significant attention, treatment, and care. James cannot provide the care required. There is no reason to believe James would resolve these issues if given six additional months' time; what is past is prologue. "It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be

able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

In addition to his challenge to reasonable efforts, Kory asserts the juvenile court was biased against him because the judge had sentenced him to prison twice during the pendency of these proceedings. He argues the judge should have granted his motion for recusal. Kory cites no authority for the proposition that a judge must grant a request to recuse solely because the judge has had experience with a party in another proceeding. Kory's failure to cite any authority in support of his argument constitutes waiver. *See* Iowa R. App. P. 6.903(2)(g)(3).

Even if Kory had not waived the argument, Kory would not be entitled to relief. "We review a judge's recusal decision for an abuse of discretion." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005). A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of actual bias in the trial of cases. *In re C.L.C.*, 798 N.W.2d 329, 336 (Iowa Ct. App. 2011). There is nothing indicating Kory did not receive a fair trial in this case. There is nothing to establish bias or partiality. It is frequently the case in termination proceedings that the juvenile court judge might have—and should have—detailed knowledge of a parent's criminal history insofar as the criminal history relates to the welfare of the child. The mere fact that the juvenile court judge in this case also happened to be the presiding judge in criminal proceedings involving this father, in and of itself, is not grounds for recusal. Speculation as to a judge's partiality is not sufficient because "there is as much obligation for a judge not to recuse when

there is no occasion for him to do so as there is for him to do so when there is."

*State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994).

For the foregoing reasons, we affirm the order of the juvenile court terminating parental rights.

**AFFIRMED ON ALL APPEALS.**