STATE of Iowa, Appellee,

v.

Jeremy Jason MANN, Appellant.

Jeremy Jason MANN, Appellant,

v.

STATE of Iowa, Appellee.

No. 91–1850.

Supreme Court of Iowa.

Feb. 23, 1994.

Dean Stowers of The Rosenberg Law Firm, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Bridget Chambers, Asst. Atty. Gen., Paul L. Martin, County Atty., and Gregg R. Rosenbladt, Asst. County Atty., for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

In these combined appeals, Jeremy Mann challenges his conviction of first-degree kidnapping and attempted murder and the district court's denial of postconviction relief. We affirm on both appeals.

In the afternoon of May 30, 1991, a seven-year-old girl reported that she had been picked up, sexually abused, and thrown into the Winnebago River. She described her assailant and the truck he was driving. Police investigation led to an application for an arrest warrant for nineteen-year-old Jeremy Mann. A warrant was also issued to search his truck and his parents' home, where he lived.

The police arrested Mann at approximately 11:15 p.m. They took him into custody, read him his *Miranda* warnings, obtained his written waiver, and interrogated him for approximately three hours. During that time, Mann made several incriminating statements.

Mann requested, and received, a psychiatric evaluation for purposes of a possible insanity or diminished capacity defense. Mann did not, however, request a competency evaluation, and none was ordered.

Mann's motion to suppress his statements on *Miranda* grounds was overruled, and the case proceeded to trial to the court, following Mann's waiver of a jury trial.

Following his conviction, Mann filed an application for postconviction relief, which was rejected. The appeals from the criminal convictions and the denial of postconviction relief were consolidated.

In his appeals, Mann raises numerous issues and subissues. The principal issues,

however, may be summarized as: the court's (1) refusal to order a competency examination and hearing, (2) failure to disclose alleged grounds for recusal, and (3) failure to suppress statements allegedly made in violation of *Miranda*. Other issues, including alleged errors in evidence rulings, ineffective assistance of counsel, and district court procedural rulings, are also raised and will be discussed briefly.

### I. *The Competency Hearing.*

It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.

*Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 112–13 (1975). *Accord State v. Edwards,* 507 N.W.2d 393, 395 (Iowa 1993).

In federal cases, the test is whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Drope,* 420 U.S. at 172, 95 S.Ct. at 904, 43 L.Ed.2d at 113 (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824, 825 (1960)).

■ Due process requires that a hearing be held to determine the competency of a defendant when there is sufficient doubt of the defendant's mental capacity to show a need for further inquiry. *See Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118. When "sufficient doubt" exists as to the defendant's competency, the trial court has an absolute responsibility to order a hearing sua sponte. *Id.* at 181, 95 S.Ct. at 908, 43 L.Ed.2d at 119.

■ Iowa Code section 812.3 requires a competency hearing if the "record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists." *See Edwards,* 507 N.W.2d at 395; *Jones v. State,* 479 N.W.2d 265, 270 (Iowa 1991); *State v.*

*Kempf,* 282 N.W.2d 704, 706 (Iowa 1979). Our review on this matter is de novo. *Jones,* 479 N.W.2d at 270.

■ The relevant considerations include (1) the defendant's apparent irrational behavior, (2) any other demeanor that suggests a competency problem, and (3) any prior medical opinion of which the trial court is aware. *Id.; State v. Myers,* 460 N.W.2d 458, 460 (Iowa 1990); *see also Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118.

■ Mann asserts on appeal that he "is functioning subnormally in his mental process" and has a "history of mental, emotional, and psychiatric problems." However, subnormal intelligence is only one factor to be considered in determining whether an accused is competent to stand trial; it will not in itself bar the trial. *State v. Stoddard,* 180 N.W.2d 448, 449 (Iowa 1970).

■ There is a presumption that a defendant is competent to stand trial, *Jones,* 479 N.W.2d at 270; *State v. Pedersen,* 309 N.W.2d 490, 496 (Iowa 1981), and the burden is on the defendant to prove otherwise. *Jones,* 479 N.W.2d at 270; *Pedersen,* 309 N.W.2d at 496. The standard of review is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Griffin v. Lockhart,* 935 F.2d 926, 930 (8th Cir.1991).

■ In the present case, a competency examination was not requested by the defendant. There is no evidence that the defendant behaved irrationally or failed to understand the nature of the proceedings in which he was involved, nor did the psychiatric examination he requested suggest that he was not competent to stand trial.

Without a request for a competency evaluation or apparent indicia of incompetency to prompt a court to investigate further on its own, we cannot say that "a reasonable person [would] believe a substantial question of the defendant's competency existed" under Iowa Code section 812.3 or under the tests of the federal cases discussed above.

## II. *Recusal of the Judge.*

The second issue, relating to the background of the trial judge, affects the appeals in both the criminal case and the postconviction case.

After the trial and prior to the postconviction hearing, Mann's counsel wrote to the trial judge to verify information the lawyer had obtained after the trial regarding the judge's alleged sexual victimization as a child. The judge replied that he and his brothers had been required to engage in sex acts with an adult relative, but the judge believed that he had been impartial in Mann's trial. In fact, he stated he did not give his own experience any thought as the Mann trial approached. Nevertheless, the trial judge recused himself from hearing the postconviction action.

■ There is a constitutional right to have a neutral and detached judge. *See Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 84, 34 L.Ed.2d 267, 270 (1972); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3541, at 548 (1984) [hereinafter Wright & Miller]. However, it has been observed that speculation is not sufficient, and "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). The reason is said to be the "ever mounting sea of litigation" and the need to maximize all available judge power. *Brody v. President & Fellows of Harvard College*, 664 F.2d 10, 12 (1st Cir. 1981).

■ Canon 3(D)(1) of our Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Mann asserts that, under this canon, the trial judge should have disqualified himself, or at least revealed the details of his background before trial so Mann could ask the trial judge to recuse himself or at least make a more informed decision on whether to waive a jury.

There are no Iowa cases applying Canon 3(D)(1) under similar circumstances, but fed-eral cases lend some insight. The language of 28 U.S.C. § 455(a) is virtually identical to our canon. That statute provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

■ The purpose of the federal statute, and presumably Canon 3(D), is to replace the "in the opinion of the judge" test with a "reasonable person" test. In other words, the test is not whether the judge self-questions his own impartiality, but whether a reasonable person would question it. Thus, an objective test is substituted for a purely subjective one. *See Davis v. Board of Sch. Comm'rs*, 517 F.2d 1044, 1052 (5th Cir.1975).

■ Disqualification under the federal statute is committed to the sound discretion of the court, *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992); *Hinman*, 831 F.2d at 938, and we have applied the same rule under our canon. *See State v. Smith*, 242 N.W.2d 320, 323–24 (Iowa 1976). The burden of showing grounds for recusal is on the party seeking it. *Id.* at 324.

■ The "reasonable person" test, as embodied in the canon, inquires whether reasonable persons with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned. *See Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 871 (9th Cir.1991).

Because of the necessarily imprecise nature of the concept involved, the test depends on the interaction of two variables: the remoteness of the interest and its extent or degree. *See* Wright & Miller § 3547, at 603.

■ Scienter is not an element of a violation of § 455(a). Nor do we believe it should be required under Canon 3(D)(1). Even a judge who is unaware of disqualifying factors may nevertheless be expected to recuse if the "reasonable person" test is met. The reason "is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855, 875 (1988).

Section 455(a), and presumably our Canon 3(D), were enacted to meet this problem and to promote public confidence in the integrity of the judicial process. *See Liljeberg,* 486 U.S. at 865, 108 S.Ct. at 2205, 100 L.Ed.2d at 875.

In determining whether a *judge* should recuse under Canon 3(D), we find some guidance in analogous cases involving challenges for cause to potential *jurors. See generally* Annotation, *Fact That Juror in Criminal Case, or Juror's Relative or Friend, Has Previously Been Victim of Criminal Incident as Ground of Disqualification,* 65 A.L.R.4th 743, 750 (1988) [hereinafter Annotation].

■ In appellate review of decisions on challenges for cause, the considerations include the person's assurances of objectivity, understanding of the concepts of the presumption of innocence and reasonable doubt, and recognition that the present defendant was not the one involved in the prior event. In addition, the length of time since the victimization, the similarity of the incidents, and the juror's lack of acquaintance with the present victim are to be considered. Annotation, 65 A.L.R.4th at 751. Obviously, when the trial is to the court as in the present case, rather than to a jury, most of these factors do not present a problem.

With these principles in mind, we turn to the facts of the present case. The trial judge was required as a young teenager to engage in sex acts with the relative. The details of these acts were set out in a deposition by the judge following the trial and prior to the postconviction case. This deposition was made available to Mann's counsel and is a part of the record on this appeal. We do not believe it is necessary to set out the details of the acts involving the trial judge. These experiences were so attenuated in time and so dissimilar in nature that no reasonable person, in our opinion, could conclude that the judge would be perceived as being dis-

qualified under Canon 3(D)(1). The case against Mann involves the forceful seizure of a stranger, not a family member. Moreover, the nature of the acts were vastly different; the victim in Mann's case was subjected to forced sex acts, including oral sex, and was thrown into a river for the purpose, according to the jury, of killing her.

The trial judge, on the other hand, was subjected as a child to far different and greatly less traumatic experiences as part of the relative's "sex education" program. There was no penetration of any kind, and the experience did not involve any physical danger or threat of death.

Based on these considerations and the time that has elapsed (over twenty years), we conclude "a reasonable, objective person, knowing all the circumstances, would not have questioned [the judge's] impartiality." *See United States v. Sturman,* 951 F.2d 1466, 1482 (6th Cir.1991) (quoting *Hughes v. United States,* 899 F.2d 1495, 1501 (6th Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 520 (1990)).[1]

III. *The Incriminating Statements.*

Mann was awakened at 11:13 p.m. on the date of the offense. He was handcuffed and transported to the police station. He was read his *Miranda* rights and signed a waiver. The written *Miranda* form acknowledged that Mann had read his rights, and the record shows that Mann replied "uh huh" when asked if he understood those rights.

■ A. Mann argues that the *Miranda* form used by the officer directed the officer to ask the subject if he wished to talk. The officer failed to do so, and Mann argues that this invalidates the statement. The issue is whether a specific inquiry of the suspect subject is required as to whether he is willing to talk.

While Mann states the issue as whether an express inquiry is required as to the subject's desire to talk, the real issue, as in any *Mi-*

1. Mann argues that the trial judge, when asked in his deposition whether a person could reasonably question his impartiality, responded "yes." Based on the general context of the judge's responses, particularly in view of his statement that he gave his own experience no thought, we believe that the judge's response cannot be viewed as conceding a violation of the canon. In any event, under Canon 3(D)(1), the test is that of a reasonable person, not the subjective belief of the judge.

*randa* case, is "whether defendant's waiver and statements were knowing, intelligent, and voluntary, not a search for a required explicit, specific oral or written waiver." *State v. Davis,* 304 N.W.2d 432, 435 (Iowa 1981).

■■■ A waiver, therefore, need not be express. *Id.* Mann's voluntary decision to talk to the officer may clearly be implied from the fact that he did so after being advised that he was not required to.

■■■ B. Mann also attacks his confession on the ground that it was involuntary. He asserts that the officer's "knowledge and understanding that [he] did not wish to talk about the alleged incident is illustrated throughout the transcript of the videotape [of the interview]."

One example of his alleged assertion of his right to remain silent is his statement that "I just have to keep to myself." However, our review of the videotape and the transcript suggests that this comment, when placed in its context, referred to his general habit of keeping to himself, and out of touch with other persons, because that is what his mother expected of him.

The "keeping to myself" statement came when the officer began to inquire about Mann's whereabouts after he left school on the day of the incident and before he picked up his brother from school. This is part of that discussion:

OFFICER: Do you sometimes wait or a, let's say you get into the area a little bit early to pick up your brother, do you wait a couple blocks away, then before it's time to pick him up?

MANN: Inaudible.

OFFICER: The one-way street?

MANN: Uh-huh.

OFFICER: Let's go back to these problems, [your] mom was telling me about. Okay, just for a minute? I got her side of the story. I just want to hear your side of the story about it with ya cause as far as I'm concerned, kiddo, you're an individual too, I mean you know you're an adult.

MANN: Not really.

OFFICER: I just want to hear your side.

MANN: I usually stay home.

OFFICER: What's that?

MANN: I usually stay home and work. That's what I'm suppose to do.

OFFICER: Are you shy?

MANN: No, not really.

OFFICER: You don't consider yourself shy?

MANN: A little bit.

OFFICER: You haven't looked at me yet. Does it bother you to look at me?

MANN: No, not really.

OFFICER: Why won't you look at me? Are you afraid of me?

MANN: No.

OFFICER: I don't want you to be afraid of me.

MANN: *I just have to keep to myself.*

OFFICER: I don't want you to keep to yourself right now. I want you to talk to me. I don't want you to think of me as, you know, some kind of a bad guy, or a bully.

MANN: I know that.

OFFICER: I want [sic] hear, I want [sic] hear Jeremy's side of this, okay? I am interested in Jeremy, and the only way that I can do that, is if you'll look at me.

MANN: Yeah, I know that. I just got to work? I don't know. If I see a guy, or talk to anybody, she's [my mother's] after me, that's what she is. It's like the last friend I had. I went to the swimming pool, she got very upset, so I just went away for awhile. Took off.

(Emphasis added.)

On appeal, Mann contends that his actions during the interview also made it clear that he chose not to talk. Our review of the evidence, including the transcript and the videotape, suggests otherwise. While the defendant constantly asked the officer to repeat questions and failed to give direct answers in response to most of the questions, we do not view these acts as a lack of understanding or an exercise of his right to remain silent as much as it was an attempt to simply be evasive. At no time did Mann request that

the questioning cease, nor did he request an attorney.

Mann notes that his confession was actually written by the officer. The videotape shows, however, that the officer first suggested that Mann write the statement. Mann declined, but he agreed to dictate the confession to the officer. Mann then read it aloud, on the videotape, with a delivery that belied any lack of communication skill. He then signed it.

Other factors are relied on to challenge the voluntariness of the statement, including the fact that several minutes of the interview were held during a gap in the videotaping. The implication apparently is that some form of duress might have been used during the time the interview was off the record. However, the videotape portion taken immediately after the gap revealed that Mann was still being evasive, and if any form of duress had been used during the videotaping gap, it was of doubtful effectiveness. Moreover, we have observed nothing in the second half of the videotape that suggests any duress had been used during the gap.

The State introduced evidence that the videotape camera was hidden, and the interrogating officer continued to interview the subject after the tape had run out because he was not aware of it. It took several minutes to locate a second tape.

We agree with the district court that the statements were given voluntarily.

IV. *Evidence Rulings.*

■ A. At the trial, a police officer testified that the victim immediately reacted to Mann's photograph in a "mug shot" book. Mann argues that this is hearsay and violated his constitutional right to confrontation.

Iowa Rule of Evidence 801(d)(1)(C) provides:

A statement is not hearsay if—

... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made after perceiving him[.]

This rule disposes of the issue. Moreover, the victim did testify at trial and was subjected to cross-examination concerning her out-of-court identification. In fact, defense counsel asked these questions and obtained these answers on cross-examination:

Q. So you've seen pictures of him before you came into court today? A. Yes.

Q. And you saw pictures of him at the police station? A. No.

Q. You don't recall seeing some pictures? A. Oh, after they got him, the next day I saw some pictures.

Q. And did anybody tell you that was the man that did it to you? A. Yes.

Q. Who told you that was the man? A. The chief and Susan [Linkenmeyer, a police officer].

This colloquy also disputes Mann's claim that he was not able to cross-examine the victim on this issue because the State had not raised it on direct examination.

■ B. At trial, a physician testified about statements made by the victim in the course of her sexual assault examination in the emergency room of the hospital.

Under Iowa Rule of Evidence 803(4), an exception is provided to the hearsay rule for

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

■ Mann claims that the doctor testified to matters, such as the truck involved, that were unrelated to a diagnosis or treatment. However, a doctor may testify as to the patient's history, as an exception to the hearsay rule, because of the probability that the patient will not fabricate statements made to the physician if the patient's future treatment and well-being are at stake. *See Devore v. Schaffer,* 245 Iowa 1017, 1021, 65 N.W.2d 553, 555 (1954).

In upholding the medical treatment exception, the United States Supreme Court has held that "a statement made in the course of procuring medical services, where the declar-

ant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony." *White v. Illinois,* 502 U.S. ——, ——, 112 S.Ct. 736, 739, 116 L.Ed.2d 848, 859 (1992).

In *State v. Pilcher,* 158 N.W.2d 631 (Iowa 1968), we allowed testimony by a physician who had questioned a rape victim about the details of her attack in an attempt to determine the cause of her hysteria prior to rendering treatment. We allowed the introduction of testimony, which included details of the assault on her, the use of force, and the use of a weapon. The court did not abuse its discretion in admitting this evidence.

■ C. Officer Susan Linkenmeyer was allowed to testify that she took the victim to the hospital for an examination because of her belief that some type of sexual assault had been inflicted on the victim. Mann contends that this was also hearsay because her opinion was based on statements to her by other officers.

The State responds that any error was waived because the only objection at trial was as to relevancy, not hearsay. It appears that the defendant has in fact waived any objection on hearsay grounds.

In any event, a hearsay objection that Officer Linkenmeyer's statement was based on hearsay statements from others would not be valid; the statements by the other officers were admissible to show Officer Linkenmeyer's responsive conduct—taking the victim to the hospital. The statements to her were therefore not hearsay. *See State v. Mitchell,* 450 N.W.2d 828, 832 (Iowa 1990).

V. *Miscellaneous Issues.*

Mann raises several miscellaneous issues, which we dispose of summarily.

A. He argues that his trial counsel was ineffective on several grounds—failing to challenge the arrest, confession, and search warrant; failing to present allegedly exculpatory evidence; and failing to challenge the victim's pretrial and in-court identification. We have examined each of these claims and

conclude that there is no merit in any of them.

■ B. Mann now challenges an order by this court that sealed the deposition given by the trial judge in connection with the judge's childhood experiences. Mann's present appellate counsel was part of an agreement with the prosecutor and the judge under which the deposition would remain confidential. How he may now attack the confidentiality of the deposition is not clear. Further, Mann can claim no prejudice because he has been given full access to the deposition.

■ C. Mann contends that, on the last day of the postconviction hearing, the postconviction judge was seen leaving the trial judge's chambers. Mann speculates that the judges had been engaged in an improper *ex parte* conference regarding the merits of Mann's postconviction claim.

Mann proposed a bill of exceptions that set out what his counsel had observed in respect to the meeting between the judges. It stated in part that during the conference the postconviction judge "disclosed that he had been speaking with [the trial judge] about the recusal issue earlier, although no details of the conversation were provided."

Mann's counsel submitted the proposed bill of exceptions to the postconviction judge in order to make a record as to what had occurred, but the judge refused to sign it on the ground that the facts stated were inaccurate. Mann raises this as an issue on appeal.

■ Even if we consider the bill of exceptions as a part of the record, we do not believe it established any error or impropriety on the part of the postconviction judge. In any event, this argument has been waived. Mann did not raise the issue immediately, but rather waited until the judge's adverse decision in the postconviction case to raise it.

■ D. Mann also contends it was error for the postconviction court to refuse to consider a letter, *in camera,* regarding the reasons that Mann did not testify at his trial. This evidence was not subject to cross-examination, and it was not presented in the form of testimony by counsel. We believe the

court was well within its discretion in declining to consider the letter.

We have considered all of the issues raised, including those not specifically discussed. We find no merit in any of them and therefore affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**