# IN THE COURT OF APPEALS OF IOWA

No. 18-1292
Filed May 15, 2019

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**DARREON CORTA DRAINE,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Scott County, Mark D. Cleve (motion for competency evaluation and plea) and Henry W. Latham II (motion in arrest of judgment), Judges.


　　　Darreon Draine appeals his conviction for willful injury causing serious injury.  **AFFIRMED.**


　　　Mark C. Smith, State Appellate Defender (until withdrawal), and Melinda J. Nye, Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.


　　　Considered by Doyle, P.J., Mullins, J., and Blane, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

Darreon Draine appeals his conviction, following a guilty plea, of willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2018). He argues the district court erred in denying his motion for competency testing. He also asserts the court abused its discretion in denying his motion in arrest of judgment.

## I.    Background Facts and Proceedings

The record reveals the following. In 2018, Draine was charged with willful injury causing serious injury following an altercation with a staff member at the Wittenmeyer Youth Center. He was sixteen at the time of the offense. Draine suffers from oppositional defiance disorder (ODD) and attention deficit hyper activity disorder (ADHD). He is of below average intelligence, was held back one year in school, and has received special-education services. He previously underwent a cognitive evaluation at University of Iowa Hospitals, and his "general intellectual abilities were estimated to be in the extremely low range . . . with difficulties observed across verbal and nonverbal domains."

Draine moved for a reverse waiver to transfer jurisdiction of this proceeding to the juvenile court, claiming services in the juvenile system would be beneficial to his rehabilitation. The district court held an evidentiary hearing on the issue, and Draine presented his mental-health, school, and medical records in support of his motion. The court denied the motion and retained the proceeding; it cited Draine's extensive juvenile criminal history and past failed rehabilitative attempts in the juvenile system.

Roughly one month after the court denied Draine's reverse-waiver motion, defense counsel became concerned with Draine's ability to assist with his own defense due to his ODD, ADHD, and low cognitive functioning. Counsel moved the district court to order Draine's competency be assessed. Counsel cited Draine's ODD, ADHD, low cognitive functioning, difficulty concentrating, erratic behavior, difficulty remembering counsel, and an instance when Draine began to threaten counsel following a meeting to support his motion. The court denied the motion, concluding "on the record presented [Draine] has not sustained by a probable cause standard any allegations that he suffers from one or more mental disorders which prevent him from appreciating the charge, understanding the proceedings, or assisting in his own defense," and Draine did not undergo any competency testing.

Draine then agreed to plead guilty as charged. At the plea hearing, Draine's responses to the court's inquiries were generally appropriate. There were two instances during the plea colloquy when Draine's responses did not comport with the posed question. When the court inquired if Draine believed his actions were justified, Draine asked what justified meant and defense counsel clarified the word's meaning to Draine. Counsel asked Draine: "Did you have any right to do that to [the victim]?" Draine responded: "Yeah." After an off-the-record discussion between Draine and his counsel, Draine was questioned if he was justified in his actions and he responded in the negative. When asked if he agreed with the minutes of evidence, Draine responded in the affirmative. However, counsel clarified they previously discussed the minutes of evidence at length and Draine actually disagreed with a portion of the minutes that stated he struck the victim with

a radio and insisted he only struck the victim with his fist. Following the colloquy, the court accepted Draine's plea.

Prior to sentencing, Draine filed a motion in arrest of judgment, alleging "he did not understand that he was entering a guilty plea" at the plea hearing. The court held a hearing on the matter. Draine testified he did not know what he was signing when he signed the plea agreement, did not understand the questions posed during the plea colloquy, and did not want to plead guilty to the charge. The court found Draine's plea to be knowing and voluntary, denied Draine's motion, and sentenced Draine to ten years of incarceration with placement at the juvenile offender unit.

Draine now appeals.

## II.    Analysis

Draine has three complaints on appeal. He claims the district court erred in denying his request for a competency evaluation, should have ordered a competency evaluation following his motion in arrest of judgment, and abused its discretion in denying the motion in arrest of judgment because his plea was not knowing and intelligent.

We first address Draine's claim the court erred in denying his request for a competency evaluation. It is critical to assess the competency of a defendant when it is reasonably called into question because "the conviction of an incompetent defendant violates due process." *See State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). When a defendant's competency is questioned, "due process requires a threshold hearing to be held to determine if there is sufficient doubt regarding the defendant's mental capacity to show a need for further

evaluation." *Id.* at 779. Because of the constitutional implications, we review the denial of a motion for a competency evaluation de novo. *See id.* at 780.

Iowa Code section 812.3 provides a procedural mechanism for district courts when a defendant's competency is at issue. Subsection (1) provides, in relevant part, the following:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations. The applicant has the burden of establishing probable cause.

Iowa Code § 812.3(1). Probable cause is established "when a reasonable person would believe that there is a substantial question of the defendant's competency." *See Einfeldt*, 914 N.W.2d at 779. Subsection (2) of section 812.3 provides for the next step if the court finds probable cause supporting the incompetency claim. It states, in relevant part:

> Upon a finding of probable cause sustaining the allegations, the court shall suspend further criminal proceedings and order the defendant to undergo a psychiatric evaluation to determine whether the defendant is suffering a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense.

Iowa Code § 812.3(2).

In the instant case, Draine asserts the district court erred when it terminated its inquiry into his competency after finding he failed to establish probable cause of his incompetency following the preliminary hearing. On appeal, we consider whether the evidence was sufficient to convince a reasonable person there was a substantial question as to whether Draine suffered from a mental disorder that

prevented him from appreciating the charge, understanding the proceedings, or assisting effectively in his defense. *See id.* § 812.3(1). When reaching our conclusion, "relevant considerations include (1) [Draine's] apparent irrational behavior, (2) any other demeanor that suggests a competency problem, and (3) any prior medical opinion of which the trial court is aware." *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994). Additionally, defense counsel's statements questioning Draine's competency play an important role in a probable-cause determination. *See Einfeldt*, 914 N.W.2d at 780. When contemplating if Draine had a rational understanding of the proceedings, we consider more than whether he was "oriented to time and place" and also consider whether he had an "accurate perception of reality and proper response to the world around [him], not disruptive behavior and a paranoid relationship with counsel." *Id.* at 781.

Draine's counsel's statement to the court at the preliminary hearing revealed troubling concerns. *See id.* at 780 ("The professional statement of [the defendant]'s attorney regarding the difficulty of representation plays an important role."). Specifically, counsel stated:

> Over the course of my involvement with Mr. Draine, there have been difficulties with him understanding essentially what I'm telling him. In fact, I met with him yesterday, and even though he has been able to identify me previously, he misidentified me as his juvenile court attorney yesterday as opposed to his district court attorney initially.
> Again, one of those things that by itself might be understandable, but having seen Mr. Draine identify me in a very different—several very different contexts, it was striking to me that he misidentified me. There have been multiple outbursts that have been witnessed by multiple people by Mr. Draine. His attention span appears to be about 20 minutes long.
> I met with him yesterday, and although we had some difficulty communicating, we got through what I wanted to get through fairly quickly, probably in about 20 minutes or so. I was then ready to

> leave, press the button, and it took the jail some time to come get me so we engaged in small talk and all of a sudden Mr. Draine was threatening me first for talking with him and then for looking at him.
>
> I am extremely concerned about whether he will be able to manage himself in trial . . . .
>
> Amongst other things that he has done at the jail, I understand that he has urinated all over the cell. I understand that he has engaged in continuous threatening behavior at the jail, behavior that if it were to continue at trial would be clearly detrimental. I don't think there's any question that Mr. Draine has a mental health disorder or multiple mental health disorders.

This statement might have provided the court with "a credible initial showing" that Draine's mental state impeded his ability to assist his counsel during the proceedings and revealed Draine's burgeoning paranoid relationship with his counsel. *See id.* at 781. Draine's medical records show his "general intellectual abilities were estimated to be in the extremely low range . . . with difficulties observed across verbal and nonverbal domains." While subnormal intelligence alone is insufficient to declare a defendant incompetent, it is a relevant factor to consider in conjunction with others. *See Mann*, 512 N.W.2d at 531.

But, as the State points out, counsel's statement at the preliminary hearing includes a concession that, although it was difficult, counsel "got through what [he] wanted to get through fairly quickly" when meeting with Draine. Further, the record made at the reverse-waiver hearing on March 27, 2018, makes clear that the professionals who had worked with Draine over the years concluded his behaviors were intentional and his violent behavior was not deterred even after his participation in numerous programs and services. There is nothing in that record that raises questions of Draine's incompetency; certainly a lot of that record supports findings of aggressive and acting-out behavior, poor choices, periodic lack of attentiveness, and lower functioning. But there is nothing that suggests

Draine did not know what he was doing or that he had an inaccurate perception of the world around him.

We have also reviewed the presentence investigation report, which essentially confirms the foregoing and raises no concerns that Draine did not appreciate the charge, understand the proceedings, or was unable to assist in his defense. Notwithstanding counsel's recounting of specific instances of concern—such as when Draine did not correctly identify him and became threatening toward him, counsel's statement that Draine has difficulty understanding what counsel tells him, and Draine's medical records indicating he is of extremely low intelligence—after a review of Draine's long history of juvenile court involvement and his pattern of aggressive and law-breaking behaviors, we conclude there is not probable cause to find "there is a bona fide doubt as to [Draine]'s competency." *See Einfeldt*, 773 N.W.2d at 782; *cf. State v. Kempf*, 282 N.W.2d 704, 709 (Iowa 1979) (requiring a competency evaluation when "the record shows a sixteen-year-old youth of borderline intelligence with emotional development lower than his age. He had limited experience with the legal system, difficulty in remembering basic events in his life, and a limited grasp of reality. He found jail intolerable and considered prison inevitable. He was allowed to plead guilty against the advice of his attorney, who questioned his competency. His guilty plea was permitted to stand even though the presentence investigation and psychiatric report lent additional substance to this concern").

Although we take heed of our supreme court's observation in *Einfeldt* that the impact of a competency evaluation on the State is modest while foregoing a competency evaluation has potentially dire consequences for a defendant, *see* 773

N.W.2d at 782, we do not find the record in this case requires an evaluation. On our de novo review, we conclude Draine failed to establish probable cause of his incompetency and the district court properly denied his motion for an evaluation.

In an appellate brief section heading, Draine also asserts the district court erred in not ordering a competency evaluation following his motion in arrest of judgment. However, Draine does not identify any specific facts upon which the court should have relied to hold a preliminary hearing and find probable cause to order a competency evaluation following the motion in arrest of judgment. *See* Iowa Code § 812.3(1) ("The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question."). On our review of the record, we find no specific facts to prompt the district court to "believe a substantial question of [Draine]'s competency existed." *See Mann*, 512 N.W.2d at 531.

Finally, Draine argues the district court abused its discretion in denying his motion in arrest of judgment. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008) (stating the denial of a motion in arrest of judgment is reviewed for an abuse of discretion). In his motion in arrest of judgment, Draine claimed he did not understand the questions asked of him during the plea colloquy, did not know what he signed when he signed the plea agreement, and did not want to plead guilty. On appeal, he claims the court should have looked beyond the plea proceedings and considered evidence of his low cognitive functioning to grant the motion. However, we will only find the district court abused its discretion if it "was exercised

on clearly untenable or unreasonable grounds." *See id.* "A ruling is untenable when the court bases it on an erroneous application of law." *Id.*

At the plea hearing, the court engaged Draine in a detailed and deliberate colloquy. When Draine's response to an inquiry prompted concern with the court, defense counsel discussed the issue with Draine off the record to ensure his understanding. The court then confirmed his understanding on the issue. When Draine responded to a question in a manner inconsistent with his prior conversations with defense counsel, counsel clarified Draine's response, and the court confirmed this clarification with Draine. The record shows the court and counsel took pains to ensure Draine understood the plea proceeding. The record of the plea proceeding demonstrates Draine entered his "plea understandably and without fear or persuasion" and "with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty." *See State v. Weckman*, 180 N.W.2d 434, 436 (Iowa 1970). As a result, we conclude the district court did not abuse its discretion when it denied the motion in arrest of judgment. *See id.* We are not dissuaded by general evidence of Draine's low cognitive functioning because it is insufficient to refute the plea proceeding's clear indicia of Draine's knowing and intelligent guilty plea. *Cf. Arnold v. State*, 540 N.W.2d 243, 246 (Iowa 1995) ("[W]hen an applicant's assertions concerning the knowing and intelligent nature of a guilty plea are directly contradicted by the record, the applicant bears a special burden to establish that the record is inaccurate.").

**III.    Conclusion**

Draine failed to show probable cause of his incompetency to prompt a competency evaluation.  The district court did not abuse its discretion in denying Draine's motion in arrest of judgment.  We affirm Draine's conviction.

**AFFIRMED.**