# IN THE COURT OF APPEALS OF IOWA

No. 21-1145
Filed April 26, 2023

**BRIAN KENNETH BROWN, n/k/a ALLISON NICOLE BROWN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for O'Brien County, Shayne Mayer, Judge.

Applicant appeals the denial of her postconviction-relief application. **AFFIRMED.**

Travis M. Visser-Armbrust of TVA Law PLLC, Sheldon, for appellant.

Brenna Bird, Attorney General, and Linda Hines, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., Chicchelly, J., and Blane, S.J.* Buller, J. and Carr, S.J. take no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BLANE, Senior Judge.**

Allison Brown appeals the district court's denial of her application for postconviction relief (PCR).[1] She claims her court-appointed trial counsel provided ineffective assistance in failing to (1) inform Brown of the potential sentences she could receive on the charges set out in the trial information, (2) investigate her mental-health and substance-abuse history, (3) request a competency evaluation, and (4) obtain a psychosexual examination for sentencing mitigation purposes. The district court denied the application. Because we find counsel did not fail in any essential duty and prejudice did not result, we affirm.

## I.     Background facts and proceedings.

Brown was charged with sexually abusing T.N. repeatedly for a period of eight years, starting when T.N. was ten years old. Deputies interviewed Brown, who initially denied the abuse. Eventually, Brown confessed to sexually abusing T.N., substantially corroborating T.N.'s history and progression of the abuse. Based on this information, the county attorney filed a trial information charging Brown with a total of 126 counts.[2] Brown's counsel filed a motion to dismiss or for a bill of particulars. Following a hearing, the district court denied the motion to

---

[1] Brown is a transgender woman. She has had a legal name change.

[2] Counts 1–6 charged Brown with sexual abuse when T.N. was under twelve years of age, class "B" felonies. Counts 7–30 charged Brown with twenty-four counts of sexual abuse when T.N. was between the ages of twelve and thirteen, class "C" felonies. Counts 31–54 charged Brown with sexual abuse while T.N. was fourteen or fifteen years old and Brown was four or more years older, class "C" felonies. Counts 55–78 charged Brown with sexual abuse against T.N.'s will, class "C" felonies. And counts 79–126 charged Brown with lascivious acts with a child, each count a serious misdemeanor.

dismiss but granted Brown's request for a bill of particulars. Brown also moved to suppress her statements to law enforcement, which the court denied.

Before providing the bill of particulars, the State and Brown entered into a plea agreement. Brown, through counsel, filed a written guilty plea, and the district court conducted a plea colloquy. Brown pled guilty to counts 1 (a class "B" felony), 7, 30, 31, 54, 77, and 78 (six class "C" felonies) in exchange for the dismissal of all remaining charges. As to sentencing, counts 1, 30, 31, and 54 were to be served concurrently, but the parties were free to argue whether counts 7, 77, and 78 would be served concurrently or consecutively to counts 1, 30, 31, and 54.[3] During the plea colloquy, Brown advised the court she was satisfied with the services provided by her attorney. The court ordered a pre-sentence investigation report, which was prepared and filed with the court. No motion in arrest of judgment was filed prior to sentencing. In October 2014, following a sentencing hearing, the district court ordered counts 7, 77, and 78 to be served concurrent with each other but consecutive to count 1, the class "B" felony.[4] Brown did not file a direct appeal.[5]

---

[3] In addition, Brown pled guilty to one count of indecent exposure involving an unrelated minor in exchange for the dismissal of a second count in case SRCR010508.

[4] Count 1 as a class "B" forcible felony required Brown to serve twenty-five years with a mandatory minimum of seventy percent, or seventeen and one-half years. By running the class "C" felonies consecutive to count 1, and ordering the one-year sentence in the serious misdemeanor to be served consecutively, Brown received an effective sentence of thirty-six years.

[5] Brown filed a motion to correct illegal sentence as to the category "B" restitution, which the district court denied. She appealed this order, which the supreme court denied as untimely.

On September 1, 2016, Brown filed her PCR application, which she later twice amended. On April 21, 2021, the court held a hearing on the amended PCR application. Brown's criminal trial attorney, Jared Weber, testified, as did Brown. The district court, in a thorough ruling, denied the application, finding counsel did not breach an essential duty and Brown also failed to prove any prejudice resulted from Weber's representation considering the substantial evidence against her. It summarized Brown's situation:

> [I]t is difficult to imagine a scenario where Brown would have received a more favorable outcome. Brown's voluntary confession and unambiguous confirmation of all charges against her created an insurmountable obstacle, effectively sealing her fate. If she went to trial, the jury would hear her confession in its entirety and it is improbable those jurors would be able to see beyond it or be willing to assess mitigating circumstances. When she declined to depose the victim, she relinquished one of her only defenses. In plea negotiations, Brown's incriminating statements did nothing to incentivize the prosecutor to bargain. After pleading guilty, the sentencing judge had little reason or leeway to reduce Brown's sentence. Ultimately, requesting a competency hearing, completing a psychosexual evaluation, or conducting further investigation was unlikely to blunt the effect of the evidence against her.

Brown appeals.

## II.     Standard of review.

The Court generally reviews postconviction rulings for correction of errors at law. *Dewberry v. State,* 941 N.W.2d 1, 4 (Iowa 2019). Ineffective assistance of counsel involves a constitutional claim and is reviewed de novo. *Sothman v. State,* 967 N.W.2d 512, 522 (Iowa 2021).

## III.     Analysis.

To establish ineffective assistance of counsel, Brown must show both a breach of an essential duty and actual prejudice. *Id.* We presume counsel acted

competently, but that presumption yields if Brown proves her "counsel's performance 'fell below the normal range of competency.'" *State v. Krogmann*, 914 N.W.2d 293, 306 (Iowa 2018) (citation omitted). To prove prejudice, Brown "must show that there is a reasonable probability that, but for counsel's errors, . . . she would not have pleaded guilty and would have insisted on going to trial." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) (citation omitted). "We do not require magic words" to meet this standard. *Sothman*, 967 N.W.2d at 526. But "a conclusory claim that she was ready to insist on going to trial [is] not a sufficient assertion of prejudice." *State v. Straw*, 709 N.W.2d 128, 137 (Iowa 2006), *superseded in part by statute on other grounds*, 2019 Iowa Acts ch. 140 §§ 28, 31 (codified at Iowa Code §§ 814.6(1)(a), .7). Brown must present evidence "showing that but for the challenged plea advice, [she] would have withdrawn her guilty plea[s] and taken the case to trial." *Sothman*, 967 N.W.2d at 526.

## A. Failure to advise of potential sentences on crimes charged in trial information.

Brown's initial claim is that her trial counsel failed to advise her of the potential total sentences that could be imposed on the counts in the trial information and therefore she "did not know what she was getting herself into." Brown argues that this was not possible since the court granted the motion for a bill of particulars, which would explain each specific crime, and the prosecution never produced the bill. Her requested remedy is "the opportunity to plead anew," not vacating her plea and taking the charges to trial.

In support of her position, Brown cites *Straw*, 709 N.W.2d at 134, asserting that it found that counsel "failing to inform a criminal defendant at the time of plea

taking or sentencing about the possible maximum penalties under the law plainly falls below the normal range of competency required for effective assistance of counsel." We find this reliance misplaced for several reasons. First, *Straw* involved a claim that the district court, not counsel, failed to advise the defendant of the potential maximum sentence of the crimes in the plea.[6] 709 N.W.2d at 137. The claim was that the court failed to explain it could run sentences concurrently or consecutively on the crimes pled to. *Id.* at 131. Counsel was ineffective for failing to either bring the error to the court's attention during the plea or for not filing a motion in arrest of judgment. *Id.* at 134. The case did not require counsel to advise a client of the full potential time that could be served on all charges in the trial information. Brown does not cite any case that imposes such a requirement.

Brown also does not claim that the court failed to inform her of the maximum sentence of the crimes to which she pled guilty. This is all that is required by Iowa Rule of Criminal Procedure 2.8(2)(b)(2).[7] Our review of the transcript shows that the court advised Brown of the potential maximum and mandatory minimum sentences of the crimes to which she pled guilty. Weber also testified that he reviewed with Brown the counts to which she agreed to plead guilty and the potential sentences the court could impose. Weber testified Brown understood.

---

[6] In *Straw*, the State conceded the district court did not substantially comply with Iowa Rule of Criminal Procedure 2.8(2)(b)(2) when it omitted any mention of the punishment Straw could face by pleading guilty to the charges in the case. 709 N.W.2d at 134.

[7] Rule 2.8(2)(b)(2) requires that at a guilty plea proceeding, the court must advise the defendant of "[t]he mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered."

This is reflected in the written guilty plea form that Brown filed in addition to the plea colloquy with the court on the record. Since Brown was advised of the maximum and minimum sentencing options available upon her guilty plea, the plea was voluntary. Her counsel was not ineffective.

**B. Failure to investigate Brown's mental-health and substance-abuse history; request a competency eevaluation; and obtain a psychosexual examination for mitigation purposes.**

Brown asserts that her trial counsel knew of her mental-health issues and substance abuse, but he failed to investigate their impact on critical stages of the proceedings, including her understanding of the charges, sentencing possibilities and knowingness and voluntariness of her guilty pleas. Brown claims she was using methamphetamine heavily while the case was pending and particularly days before the guilty plea. She points to when she was several hours late for the suppression hearing, attributing this to her meth use. But as the trial court noted, at the time Brown explained the tardiness as car trouble, not drug use. Weber testified he believed Brown's drug use was historical and not recent. Weber also testified he was familiar with drug use symptoms. While representing Brown, Weber did not see any present signs of drug abuse to lead him to believe he needed to investigate further. And Brown did not bring up any issues to her attorney.

Also, during the plea colloquy, the court asked Brown if she was under the influence of drugs, which Brown denied. The judge did not observe any apparent signs of drug use that would have triggered the court to halt the plea and order an evaluation. *See State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994). A review of the plea colloquy also discloses that Brown advised the court when she did not

understand a particular question and received further explanation, even though Brown testified at the PCR trial that she did not recall even being before the judge for the guilty plea; that it was all a "blur." The record refutes Brown's claim that she did not understand the plea proceedings due to her coming off of a four-day sleepless binge on meth. On this record, we cannot find that Weber failed in any essential duty to his client.

Next, Brown claims she suffered from mental-health issues including gender dysphoria, post-traumatic stress disorder, depression, bi-polar disorder, and anxiety. She argues her mental healthprevented her from adequately understanding the proceedings and assisting in her defense. At the PCR trial, Brown did not submit any documentation supporting any of these diagnoses. She testified that the gender dysphoria diagnosis was made in 2015 upon arriving at prison to start her incarceration. Brown testified that she did not discuss any mental-health issues or their impact with her trial counsel.

Weber acknowledged that he recalls Brown had some form of mental-health issue and that she was seeing a counselor. But he did not see where this interfered with Brown understanding the proceedings or assisting in her defense. Brown did not submit evidence or records from the counselor on the reason for counseling or any impact it might have on Brown's ability to understand the criminal proceedings. In reviewing the office file, Weber recalled that there were numerous conferences and correspondence with Brown and she was actively involved regarding the representation. We see nothing that should have triggered Weber to look deeper into Brown's mental health.

Brown further argues that her substance-abuse and mental-health issues should have raised sufficient concern that trial counsel should have requested a competency evaluation and was ineffective for not requesting one. The Iowa Code provides:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations.

Iowa Code § 812.3(1). Under the statute, a competency hearing should be held if the record contains information "from which a reasonable person would believe a substantial question of defendant's competency exists." *State v. Rieflin*, 558 N.W.2d 149, 152 (Iowa 1996), *reversed on other grounds by State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). "The relevant considerations include (1) the defendant's apparent irrational behavior, (2) any other demeanor that suggests a competency problem, and (3) any prior medical opinion of which the trial court is aware." *Mann*, 512 N.W.2d at 531.

As discussed above, we find nothing in the record that would have triggered Weber to file an application with the court or for the court sua sponte to order a competency evaluation. Brown did not exhibit any irrational behavior or other demeanor that suggested a competency problem, and no prior medical opinion was made known to Weber or the court suggesting the need for an evaluation.

Finally, Brown argues that her attorney was incompetent for failing to obtain a psychosexual examination for mitigation purposes. Both Brown and Weber testified that a psychosexual examination was discussed. Brown indicated Weber

went so far as to see how much the examination would cost.[8]  Weber determined that since Brown substantially confessed and did not want Weber to depose T.N., and since the State was insisting on a plea to a class "B" felony with a seventy percent mandatory minimum, a psychosexual exam would serve no useful mitigation purpose.  Weber reasoned that in a psychosexual exam, Brown would be required to admit to the sexual abuse and the exam report would likely have to be disclosed to the prosecution, which would be problematic if Brown went to trial.

Brown argues that once she pled guilty, Weber's reason for not pursuing the psychosexual evaluation went away and "the benefit of convincing the judge of Brown's low risk for re-offense remained yet no such examination was performed."  Brown concludes: "With the potential opinion of an expert related to Brown's likelihood for reoffending, the sentence itself may very well have been reduced from what was handed down."  Brown's argument is speculative and pre-supposes that the psychosexual evaluation would have been favorable.  Brown has not submitted an evaluation to support her conclusion.  Weber testified that in light of Brown's confession to the extensive sexual abuse it was unlikely the court would consider a psychosexual evaluation as mitigating and it would have little effect on the court's sentence in light of the State's requirement that Brown plead to a class "B" felony with a seventy percent mandatory minimum.

We find Brown's trial counsel did not fail in any essential duty.

---

[8] Weber was concerned that if Brown filed an application with the court for a psychosexual evaluation at State expense, the State would be aware that the exam was being done and the State would file a request with the court that the psychosexual evaluation report be produced.

## C. Prejudice.

"If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). As noted, Brown's requested remedy is to be allowed to plead over, not that she be granted a new trial. Even on appeal, Brown does not want to take 126 individual counts to trial. *See Sothman*, 967 N.W.2d at 526. Based upon our review, we also find, considering the length of time over which the abuse occurred, the substantial evidence against Brown including her confession, and the plea agreement reached that significantly reduced the potential time to be served, that Brown failed to establish that she would have proceeded to trial but for counsel's claimed incompetency. Thus, she also fails to establish prejudice.

**AFFIRMED.**