# IN THE COURT OF APPEALS OF IOWA

No. 23-1292
Filed December 4, 2024

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JOHN CALABRAZE PECORA III,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Ackley, Judge.

A defendant appeals from his convictions on one count of second-degree sexual abuse, two counts of third-degree sexual abuse, and one merged count of lascivious acts with a child, arguing the district court abused its discretion in excluding evidence as irrelevant. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Buller, J., and Telleen, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**TELLEEN, Senior Judge.**

John Pecora, III, appeals from his convictions on one count of second-degree sexual abuse, two counts of third-degree sexual abuse, and one merged count of lascivious acts with a child. Pecora, who was E.M.'s stepfather at the time of the abuse, argues that the district court abused its discretion in excluding as irrelevant evidence of (1) his divorce from E.M.'s mother, and (2) an alleged custody dispute over E.M.'s younger sister. Pecora also alleges the district court judge erred in failing to sua sponte recuse herself from his criminal trial because she entered the decree in his dissolution of marriage proceedings. Finding no abuses of discretion, we affirm.

## I. Background Facts and Proceedings

In 2011, Pecora married Elizabeth Pecora. Elizabeth had two children from a previous marriage—E.M., who was twenty years old at the time of the 2023 trial, and a son who was twenty-one years old at the time of trial. While they were married, Pecora and Elizabeth had a daughter together who was nine years old at the time of trial. The victim lived with Pecora, Elizabeth, and her two siblings until she was sixteen.

Elizabeth began to sleep with the infant shortly after her birth. As a result, Pecora began sleeping on the couch in the living room. The victim had her own bedroom but, at age ten or eleven, began to sleep on the couch with Pecora because of nightmares or fear of ghosts—the exact reason is unclear. At some point, Pecora began sleeping on a mattress topper on the living room floor due to his spinal stenoses, degenerative disease, and a herniated disc. The victim would join him in sleeping on the mattress topper. She explained that she and Pecora

would often sleep in the "spooning position." Pecora stated that he did not believe it was inappropriate for him to sleep with the victim in that way because he was not trying to "sexualize her." The victim claimed that, at this age, she had a good relationship with Pecora because he was nice to her and helped her with her anxiety. She testified that he would tell her things such as "how beautiful my hair was, and how pretty it was, and he would tell me how awesome I was, and just kind of give me a confidence boost." She also described her relationship with her mother as having turned "sour" around this time.

According to the victim, Pecora began to sexually abuse her on her eleventh birthday. The victim was having trouble falling asleep so, while in the family's living room, Pecora showed her a pornographic website and described masturbation to her—explaining it would help her sleep. He told her she "was getting older," and that meant "it's okay to masturbate" and "to feel pleasure." She testified that he then "stuck his hands down my pants," "touch[ed] my clitoris," and "started to masturbate me."

Pecora made the victim "suck his penis" while he sat on the couch multiple times between the age of eleven and thirteen. She testified that he would take videos of these incidents on his phone. On another occasion, the family took a trip to Iowa City. Pecora took nude photos of the victim lying in the bathtub while alone with her in the hotel. She explained that he had her "pose for him in sexual ways."

The victim also testified that, between the time she was thirteen and sixteen, he would drug her with Lorazepam under the pretext of helping her sleep, which she stated, "would knock me out." During these and other times, he would place a back massager between her legs until he got her "to cum" and would sometimes

put his mouth on her vagina and "eat [her] out." She also testified that she would wake up after being drugged to find him with his penis inside her vagina.

On other occasions, Pecora would have the victim take her clothing off, lay naked on the living room mattress topper, and rub essential oils into her breasts. He told her that the purpose of using the essential oils was to make her breasts grow larger. Pecora denied that any of the incidents of sexual abuse occurred.

These events went unreported during the period they occurred, but the victim began to disclose the events to her therapist, Dr. Jessica Tartaglione, and psychiatrist, Dr. Lee Berman, shortly after she turned eighteen. She first disclosed the abuse to Dr. Berman in June 2021. Being a mandatory reporter, Dr. Berman immediately reported that disclosure to the authorities. The victim had developed close relationships with Dr. Tartaglione and Dr. Berman—having been a patient with them since she was sixteen.

Dr. Berman testified that it is typical for a patient to not disclose trauma early in the doctor-patient relationship and that he does not push for it: "We don't initially dive into trauma right away, because it's just like re-traumatizing the person again, once they start pulling things out that they've repressed, and it's very painful, and they become suicidal if it's done too early." Dr. Berman also testified that the victim exhibited symptoms of post-traumatic stress disorder (PTSD) before she disclosed the abuse to him, and she never exhibited any signs of delusions.

Dr. Tartaglione testified that the victim disclosed the abuse to her in July 2021, after the victim had already reported it to Dr. Berman and the report had been filed with authorities: "[F]ollowing hearing about the disclosure, she scheduled a follow-up session with me, and started doing what I will call word

vomit, not even sitting down in my office, it just all came out, a lot of tears, and kind of fragments and scattered." Like Dr. Berman, Dr. Tartaglione did not believe the victim suffered from any delusions or false memories. She explained that the victim's physical symptoms and behaviors lined up with her stories.

Following the July 2021 report and subsequent investigation, Pecora was charged in December 2022. Following trial, the jury found him guilty as charged of second-degree sexual abuse, under Iowa Code section 709.3(2) (2014)[1] (Count I), lascivious acts with a child, under Iowa Code section 709.8(1) and (2)(a) (Count II), and three counts of third-degree sexual abuse, under Iowa Code sections 709.4(1)(b)(2) (2015),[2] (1)(b)(3)(d) (2017),[3] and (1)(a) (2019) (Counts III,[4] IV, and V). On May 5, 2023, the district court entered judgment and sentenced Pecora to twenty-five years in prison with a mandatory minimum of seventeen and one-half years (Count I), ten years (Counts II and III), ten years (Count IV); and ten years (Count V). The sentences were ordered to run consecutively for a total of fifty-five years. Pecora now appeals.

## II. Standard of Review

We review a district court's evidentiary rulings for abuse of discretion. *State v. Tipton,* 897 N.W.2d 653, 691 (Iowa 2017). "An abuse of discretion occurs when

---

[1] The code section current as of the date of judgment was Iowa Code § 709.3(1)(b) (2023).

[2] There was no equivalent code section current as of the date of judgment. This offense would be second-degree sexual abuse under the 2023 iteration of the Iowa Code.

[3] The code section current as of the date of judgment was Iowa Code § 709.4(1)(b)(2)(d).

[4] Count III was merged with Count II by the district court.

the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (citation omitted).

### III. Error Preservation

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This principle ensures that issues—including constitutional issues—are not considered for the first time on appeal. *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997). A district court judge does have an ethical duty to sua sponte recuse herself from matters which disqualify her—regardless of whether a motion to disqualify is filed. *See* Iowa Code of Judicial Conduct R. 51:2.11 cmt. 2. But this obligation does not relate to error preservation. The issue of recusal is not preserved for our review if a litigant fails to bring that issue to the district court's attention. *See State v. Mann, 512 N.W.2d 528, 536 (Iowa 1994)* (holding that recusal issue was "waived" when party "did not raise the issue immediately, but rather waited until the judge's adverse decision in the postconviction case to raise it").

There is no dispute here that Pecora failed to raise the issue of recusal at the district court level.[5] We thus cannot consider it in this appeal.

### IV. Discussion

Pecora challenges his convictions based on what he alleges is the district court's abuse of discretion in excluding evidence about his divorce and alleged

---

[5] Because the issue has not been preserved, we express no opinion as to whether the district court should have recused sua sponte.

child custody dispute that he believes was relevant on whether the victim had a motive to fabricate sexual abuse claims against him.

At trial, Pecora sought to admit evidence of his divorce from Elizabeth and evidence that, after he and Elizabeth separated, Pecora told Elizabeth that he did not like her boyfriend and threatened to file for custody of the youngest daughter. He argues that this evidence was relevant to show that the victim had a motive to fabricate her sexual abuse claims to help her mother in the divorce and to help her mother maintain custody of her younger sister. The district court excluded that evidence on the ground that it was not relevant.

Relevant evidence is generally admissible. Iowa R. Evid. 5.402 (2023). Evidence is relevant if (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action. Iowa. R. Evid. 5.401(a)–(b) (cleaned up).

Pecora sought to show that the victim was aware of unfounded child abuse claims that had been made against Elizabeth by Pecora's family, that Pecora filed for divorce and custody at that time, and that the victim was aware of the other custody disagreements around that time. We agree with the district court that Pecora failed to link the proposed evidence and the victim's motives. In fact, some of the evidence Pecora tried to introduce supports the opposite conclusion for which he sought to use it.

At trial Pecora made an offer of proof relating to the evidence he attempted to introduce. In or around June 2021, the victim was driving a vehicle registered in Pecora's name and was involved in an accident. Pecora claimed he would lose his license because of the accident and told Elizabeth he would not be paying his

$300 monthly child support until the accident was paid off. Pecora never alleged that Elizabeth told the victim about this conversation, which makes the conversation irrelevant. And even if the victim had been informed of this conversation, Pecora never explained why it would motivate the victim to fabricate years of sexual abuse allegations.

Pecora's most notable argument during his offer of proof related to an unfounded child abuse claim filed with the Iowa Department of Health and Human Services (HHS) against Elizabeth. The argument is that this report against Elizabeth motivated the victim to make the sexual abuse claims against Pecora. The problem with this line of argument is that Pecora's sexual abuse was reported to authorities on June 16, 2021 and the unfounded HHS report against her mother was not made until June 22, 2021. This timeline would actually support an argument that the abuse report against Elizabeth was retribution for the victim making her report against Pecora which would undermine Pecora's defense.

Further, the timeline of the divorce proceedings does not line up with Pecora's argument for their relevance. Pecora sought to show that evidence of the divorce would be relevant to the issue of the victim's allegations. But the divorce petition was not filed until August 6, 2021—nearly two months after the victim's first disclosure.

And Pecora drew no connection between the victim's report and any custody or marriage friction leading up to the divorce petition. Elizabeth admitted that she and Pecora were "having issues over the custody of [the youngest daughter" and that he did not like her new boyfriend. But stated that she did not know if those issues impacted the victim and did not remember if she had even

told the victim that she and Pecora were getting divorced. And nothing proffered during the offer of proof supported Pecora's claim that this was a particularly venomous divorce that would have left the victim with the motivation to make false sexual abuse claims. As the district court noted, very few proceedings actually occurred in the divorce. The petition was filed, Elizabeth failed to answer, and a default decree was entered. Evidence of the divorce proceedings cuts against Pecora's claim that there was a contentious custody battle over the youngest daughter. And Pecora never explained how his dislike for Elizabeth's boyfriend would create motive for the victim beyond its relation to that custody issue. Only one thing connected any of the proffered evidence to the victim's alleged false motives—pure speculation.

It is also unclear what further context this information would have provided the jury. The jury was aware that Pecora and Elizabeth separated. They were aware that Pecora and Elizabeth argued about Pecora's relationship with the victim—with Elizabeth having even yelled, "You're sleeping with my daughter," at Pecora in front of one of Pecora's friends. And in his closing argument, Pecora painted a picture of a "family in turmoil" and mentioned the divorce proceedings and child custody issue. That evidence was not relevant to the extent that it was permitted at trial and is not relevant to the purpose for which he seeks to introduce it again now.

Finding the district court committed no abuse of discretion, we affirm Pecora's convictions.

**AFFIRMED.**