# IN THE COURT OF APPEALS OF IOWA

No. 19-1228
Filed September 22, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANTREON LEVON NEWMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

        Dantreon Newman appeals following his guilty plea to lascivious acts with a child.  **AFFIRMED.**

        Eric W. Manning of Manning Law Office, P.L.L.C., Urbandale, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., Greer, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**DANILSON, Senior Judge.**

Dantreon Newman appeals following his guilty plea to lascivious acts with a child–solicitation. He contends his trial counsel was ineffective in failing to request that he be "examined for competency" or use his "mental health state to assert a diminished capacity defense" and the district court "should have ordered a competency hearing." Upon our review, we affirm.

## I.      *Factual Background*

Newman was charged with third-degree sexual abuse following an incident in which he solicited a thirteen-year-old female to an abandoned apartment, where he forced her to engage in sexual intercourse. A plea agreement was reached, in which Newman agreed to plead guilty to lascivious acts with a child–solicitation, a class "D" felony. *See* Iowa Code § 709.8(1)(d) (2017).

At the plea hearing, the district court engaged Newman in a colloquy to establish that his guilty plea was knowing, voluntary, and supported by a factual basis. The court inquired into Newman's mental competency through several questions, to which Newman answered that he was not "under the influence of an alcoholic beverage, drug, or medication"; he was not "seeing a doctor, psychiatrist, or psychologist"; and he had not "been hospitalized in the last six months." Newman agreed he was pleading guilty "voluntarily and of [my] own free will," "because . . . it's about the best option—the best way to go." He further stated he understood his rights and the consequences of pleading guilty, and the court accepted his plea.

Newman waived his right to file a motion in arrest of judgment to challenge his plea. Meanwhile, the State prepared a presentence investigation report (PSI).

The PSI indicated Newman "[h]as been diagnosed with ADHD, Bipolar Disorder, and Schizophrenia" and was "taking medication to address these issues while in the Polk County Jail." The PSI further noted Newman "was involved in special education programming while in school" and was "interested in obtaining his GED in the future."

Newman later appeared for sentencing with counsel. At the outset of the hearing, defense counsel addressed the court regarding "something that appeared in the [PSI]." The following colloquy then took place:

> DEFENSE COUNSEL: Judge, I just wanted to make a little record about references in this report to special education and mental health diagnoses by Mr. Newman of schizophrenia and bipolar. Those were things that I was not aware of at the time of his plea, but, nonetheless, I exercised a reasonable professional judgment.
>
> The reason that those were concerning to me when I saw them in the report was two things that I would want to speak with him about would be whether to request a competency evaluation or whether to possibly advance a defense of diminished responsibility at trial. I think that I exercised reasonable professional judgment in dealing with those issues, because except with respect to the competency evaluation, although I didn't know that Mr. Newman had received special education services, I was very aware that he limited—that he was obviously, the product of a poor school. And in talking with him about his case, I looked very closely at how he would process information and make decisions.
>
> We talked about, in this case, obviously, he has a lot of bad options. We talked about some of the things that were very complicated. We talked about the registry and special sentences and how that information would affect him, potentially, for his whole life if he was convicted as charged. During those conversations, which were really complex, Mr. Newman was able to appropriately process the information, weigh it, and make what I thought was the best decision. So that raised absolutely no concerns for me whatsoever about his competency.
>
> And a second piece of information that was relevant to me in exercising professional judgment on those grounds was when we got the DNA test results back I was able to discuss that with Mr. Newman, and I felt like he was really able to appreciate how having

those results changed the strength of the State's case, making trial a much worse option for him to pursue.

Those are just a few of the examples of why I would not have moved for a competency evaluation in this case. And for the same reasons, I would say that I wouldn't have advanced, and I don't think Mr. Newman would have wanted me to advance, a diminished responsibility defense at trial.

We made our decision to plead guilty recognizing that it was the best option for Mr. Newman amongst a whole bunch of really bad options. And I don't think anything about that information that I—that I learned from the PSI would change that or would change Mr. Newman's desire to continue with this guilty plea. Thank you.

COURT: All right.

Mr. Newman, you heard the statement of [defense counsel]. Do you understand what he was talking about?

NEWMAN: Yes, sir. Yes, Your Honor.

COURT: Do you have any comments or do you have any disagreement with anything that he said?

NEWMAN: No.

COURT: Okay. I need an answer out loud.

NEWMAN: No.

COURT: Okay. We had a lengthy discussion during the plea hearing, and it appeared to me during that hearing that you were processing everything well and understood everything well during the hearing; is that correct?

NEWMAN: Yes, sir.

The district court proceeded and imposed Newman's sentence. Newman appealed.

## II.    *Good Cause to Appeal*

Preliminarily, the State argues that the court "should dismiss the appeal" because "Newman has no right of appeal from his guilty plea" under Iowa Code section 814.6 (Supp. 2019), his conviction was not for a class "A" felony, and he "has not alleged or established 'good cause' as to why the appeal should be permitted to proceed."[1]    Iowa Code section 814.6(1)(a)(3) provides: "Right of

---

[1] Because the district court entered Newman's judgment of conviction and sentence after July 1, 2019, the statutory amendment to section 814.6 restricting appeals from guilty pleas is applicable to his appeal.

appeal is granted the defendant from [a] final judgment of sentence, except . . . [a] conviction where the defendant has pled guilty," unless "the defendant establishes good cause." "Good cause" means a "legally sufficient reason." *State v. Tucker*, 959 N.W.2d 140, 153 (Iowa 2021) (quoting *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020)). "A legally sufficient reason to appeal as a matter of right is a reason that, at a minimum, would allow a court to provide some relief on direct appeal." *Id.*

Newman has not addressed the good-cause issue with respect to his claim of incompetence at the time of his guilty plea. But "[t]his court has addressed the issue and concluded 'that good cause exists to challenge competency at the time of the plea irrespective of whether the issue was contested below.'" *State v. Chindlund*, No. 20-1368, 2021 WL 2708944, at *2 (Iowa Ct. App. June 30, 2021) (quoting *State v. Cue*, No. 19-2150, 2020 WL 6157813, at *3 (Iowa Ct. App. Oct. 21, 2020)). Accordingly, we find Newman has good cause to proceed with this appeal.[2]

### III. *Ineffective Assistance of Counsel*

Newman first contends his trial counsel was ineffective in failing to request that he be "examined for competency" or use his "mental health state to assert a diminished capacity defense." The State again responds that recent statutory amendments preclude consideration of this claim. *See* Iowa Code § 814.7 (stating an ineffective-assistance-of-counsel "claim shall not be decided on direct appeal

---

[2] The State filed a motion to dismiss premised upon the same grounds—that Newman failed to show good cause—and the motion was ordered to be submitted with this appeal. For the reasons provided, we find it unnecessary to further address the motion.

from the criminal proceedings"). On this point, we agree with the State. Accordingly, we do not address the merits of Newman's claim of ineffective assistance of counsel in this direct appeal.

## IV.    *Competency*

Newman's second issue is directed to whether the district court erred in failing to order a competency hearing.[3] According to Newman, "Based on the information in the transcript[] of the plea, sentencing and the PSI Report,[4] there is a basis for determining that [he] may not have been competent to stand trial and should have been given a competency hearing and subsequent examination." Specifically, Newman contends the court failed to make further inquiry into his competency after it "had access to [the] PSI report which stated that [he] suffered from bi-polar disorder, schizophrenia and had special education in school."

"Under the United States Constitution, the United States Supreme Court has declared that the conviction of an incompetent defendant violates due process." *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). "We review whether a trial court should have ordered a competency hearing de novo." *Id.*

Iowa Code section 812.3(1) provides:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the

---

[3] The State does not contend Newman's appeal of this issue is foreclosed by the amendments to Iowa Code sections 814.6 and 814.7. The State also acknowledges that a claim the district court failed to order a competency hearing sua sponte is not subject to traditional rules of error preservation. *See State v. Lucas*, 323 N.W.2d 228, 230 (Iowa 1982).

[4] Newman acknowledges no evidence existed in this record to order a competency hearing until the PSI was prepared for the sentencing hearing.

> defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations. The applicant has the burden of establishing probable cause. *The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question*.

(Emphasis added.) There is a presumption that a defendant is competent to stand trial, and the defendant has the burden to prove incompetence. *See State v. Gaston*, No. 18-1293, 2020 WL 1307690, at *2 (Iowa Ct. App. Mar. 18, 2020). The question here is whether there were "specific facts" regarding Newman's competency that required the court to order a competency hearing sua sponte. *See* Iowa Code § 812.3(1).

In *Einfeldt*, the court reversed the defendant's judgment and remanded for a new trial upon concluding the factors before the district court (i.e., the defendant informed defense counsel that she "suffered from mental health issues in the past" and defense counsel informed the court "regarding the difficulty of representation"; the defendant testified she "want[ed] to kill her lawyer and stab her lawyer in the neck with a pen" and that she believed "someone was 'poisoning the water'"; the defendant did not understand the charges against her and "did not remember the events of the previous day"; the defendant told the court "she had been diagnosed with paranoid schizophrenia, bipolar disorder, posttraumatic stress disorder, and attention deficit disorder" and "she had prescriptions for these disorders but had not been taking her medication for a couple of months because she did not have the money"; and the PSI corroborated the defendant's statements and "recommended an assessment by a licensed professional") should have led a

reasonable trial judge to experience doubt on whether the defendant was competent to stand trial. 914 N.W.2d at 777–78, 781–83.

Newman seeks the same resolution here. However, after consideration of the appropriate factors, we conclude there is insufficient evidence to meet even the "low threshold" noted in *Einfeldt*, and we decline to determine the district court committed legal error in failing to order a competency hearing pursuant to Iowa Code section 812.3 on the record before us. *Cf. id.* at 782. Although the PSI provided information regarding Newman's past diagnoses of several mental-health issues, we note that the PSI also stated Newman was taking his medication while in custody. We are not privy to know whether medications were taken, as Newman stated during the guilty plea proceeding that he was not on any medication. We acknowledge the district court may have been well advised to inquire at the sentencing hearing concerning Newman's use of any medications.

Notwithstanding, we find it significant that defense counsel informed the court that he had no concern about Newman's mental health based on their interactions. Newman concedes, "The Trial Court is to give great weight based on the statements of trail [sic] counsel regarding their client's competency." Here, defense counsel spoke at length at sentencing and noted no difficulties in communications with Newman. Defense counsel also noted a lack of any irrational comments or behavior by Newman during the guilty plea proceeding and other attorney-client discussions, and the fact that Newman appeared to understand and properly respond to the court's colloquy and other statements. *Cf. id.* at 780–81 (noting "[c]ompetency evaluations include a 'careful assessment of the accused's ability to interact with counsel'" and a "professional statement" by defense counsel

regarding representation "plays an important role" (citation omitted)). We also note that "[a] history of mental illness standing alone . . . does not mean the defendant is incompetent." *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993).

It may have helped our resolution if the district court had inquired concerning Newman's mental-health issues and medication, but without any unusual conduct, improper responses, or apprehension by defense counsel we conclude these facts and circumstances are insufficient to order a competency evaluation under Iowa Code 812.3. *See, e.g.*, *Chindlund*, 2021 WL 2708944, at *3 ("[O]n the record presented, Chindlund has failed to meet his burden to prove he was incompetent when his guilty plea was accepted."); *Cue*, 2020 WL 6157813, at *4 ("In sum, Cue failed to show any behavior suggesting he was incompetent to plead guilty."). We reach these conclusions notwithstanding the fact that "any one factor alone may sufficiently raise a reasonable doubt in the mind of a reasonable trial judge." *Einfeldt*, 914 N.W.2d at 781. And we acknowledge a more adequate record may be developed in postconviction-relief proceedings. *See Chindlund*, 2021 WL 2708944, at *3 ("[Chindlund's] claim is better suited for postconviction relief where an adequate record may be developed.").

We affirm Newman's conviction.

**AFFIRMED.**