# IN THE COURT OF APPEALS OF IOWA

No. 24-0613
Filed August 6, 2025

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**KELLEY JERRELL TATUM,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


       Kelley Tatum appeals his conviction for first-degree robbery.  **AFFIRMED.**


       Martha  J.  Lucey,  State  Appellate  Defender,  and  Theresa  R.  Wilson,

Assistant Appellate Defender, for appellant.

       Brenna  Bird,  Attorney  General,  and  David  Banta,  Assistant  Attorney

General, for appellee.


       Considered  without  oral  argument  by  Tabor,  C.J.,  Buller,  J.,  and  Bower,

S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**BOWER, Senior Judge.**

Kelley Tatum appeals his conviction for first-degree robbery. He challenges the sufficiency of the evidence supporting his conviction and claims the district court erred in failing to order a competency hearing. Upon our review, we affirm.

## I.    Background Facts and Proceedings

In the early morning hours of August 19, 2023, three men attacked N.N. after he left a bar in downtown Des Moines. The men "knocked [N.N.] unconscious" and proceeded to kick and stomp him while he was on the ground. The men searched N.N. for valuables, taking N.N.'s car keys from his front pocket. With N.N. "laying there" "out cold," the three men fled the scene. Two of the men continued to search for N.N.'s car, using the key fob as a guide to activate the vehicle. They found the car nearby and drove away. Police apprehended the two men a few hours later, following a traffic stop of N.N.'s vehicle, which had been reported stolen. Tatum, the front-seat passenger, was identified as one of the three men who attacked N.N. and one of the two men who left the scene in N.N.'s vehicle.

The State charged Tatum with first-degree robbery, "individually or by joint criminal conduct, or by aiding and abetting another." The case proceeded to trial, and a Polk County jury found him guilty as charged.

The sentencing hearing was continued multiple times to accommodate Tatum's indecision about whether to represent himself with standby counsel or have full-time counsel. Tatum also filed a myriad of pro se motions, which the district court addressed prior to sentencing. Eventually, the court sentenced Tatum

to an indeterminate sentence of twenty-five years with a mandatory minimum of twelve and one-half years.[1]

Tatum appeals. Additional facts will be set forth below as relevant to his claims.

## II.    Sufficiency of the Evidence

Tatum challenges the sufficiency of the evidence supporting his conviction. We review such claims for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We are bound by the jury's verdict if supported by substantial evidence. *Id.* Evidence is substantial if it is sufficient to convince a reasonable juror the defendant is guilty beyond a reasonable doubt. *Id.* To assess whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021) (citation omitted).

To convict Tatum of first-degree robbery, the jury was instructed the State must prove:

> 1. On or about August 19, 2023, in Polk County, Iowa, Kelley Tatum, or someone he aided and abetted had the specific intent to commit a theft.
> 2. To carry out his intention, or to assist him in escaping from the scene, with or without the stolen property, Kelley Tatum or someone he aided and abetted committed an assault on [N.N.]. The crime of "assault" is explained in Instruction No. 22.
> 3. Kelley Tatum or someone he aided and abetted purposefully inflicted or attempted to inflict a serious injury on [N.N.].

---

[1] Tatum had previously received two years' probation on a deferred judgment for charges of first-degree theft and assault in an unrelated case. The court ran Tatum's sentence in this case concurrently to the sentence imposed in the unrelated case upon finding Tatum's deferred judgment was revoked.

Concerning the second element, Instruction No. 22 instructed the jury the State had to prove the following elements of "assault":

1. On or about August 19, 2023, in Polk County, Iowa, Kelley Tatum or someone he aided and abetted did an act which was specifically intended to:
    (a) Result in physical contact which was insulting or offensive to [N.N.] or
    (b) Place [N.N.] in fear of an immediate physical contact which would have been painful, injurious, insulting, or offensive to him. (The State need only prove one of the two alternatives set out in paragraphs (a) and (b)).
2. Kelley Tatum or someone he aided and abetted had the apparent ability to do the act. The term "apparent ability" means a reasonable person in Kelley Tatum's position would expect the act to be completed under the existing facts and circumstances.

The jury was further instructed:

All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.

"Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove Kelley Tatum's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it and does not depend upon the degree of another person's guilt.

If you find the State proved Kelly Tatum directly committed the crime, or knowingly "aided and abetted" other person(s) in the commission of the crime, then Kelly Tatum is guilty of the crime charged.

Certain crimes charged require a specific intent. Therefore, before you can find Kelley Tatum "aided and abetted" the commission of the crime, the State must prove he either had such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If Kelley Tatum did not have the specific intent, or knowledge the others had such specific intent, he is not guilty of the crime charged.

Tatum claims the evidence was insufficient "to establish that [he] either actively participated in or encouraged the robbery of [N.N.]." Tatum maintains "[h]is mere presence during the offense does not establish his guilt."

But the evidence presented at trial established more than Tatum's "mere presence" at the scene of the offense. Kyle Hutchins, who worked as a DJ, saw the assault of N.N. as he was leaving work. Hutchins testified he saw "three individuals around [N.N.], kicking his head and torso, and [N.N.] appeared pretty defenseless"; "after they assaulted him, they ran away." Meanwhile, another bystander called 911, reporting, "A dude just got knocked out on the street" and "he's laying in the middle of the road."[2] The caller described "three assailants"; "They hit him and jumped him and stuck their hands in his pocket and left." He also provided descriptions of the three assailants, stating one was wearing "orange underwear and no shirt."

Street surveillance cameras recorded the assault and the subsequent car theft. Tatum and another assailant, Fredrick Young, ran away from the scene and searched for N.N.'s car, using the key fob to activate the vehicle. Upon discovering the correct vehicle, Tatum and Young ran to it, jumped in, and drove away. N.N.'s vehicle was reported missing shortly thereafter. Officer Minnehan was on overnight patrol and spotted the stolen vehicle being driven eastbound on Douglas Avenue. Officer Minnehan conducted a "high risk stop" of the vehicle. Young, the

---

[2] N.N., who is in the Army, was unable to perform normal workouts for over a month due to injuries he sustained during the incident. He continues to have spinal cord damage, bulging disks, and problems with short-term memory loss.

driver, fled from the vehicle on foot. Tatum, the front passenger, was arrested. Tatum was shirtless, wearing orange underwear and a large gold chain.

Tatum denied knowing how Young got the vehicle, maintaining he had "no idea the car was stolen until [they] got pulled over." Tatum told the arresting officers Young picked him up and they were riding around before they were stopped. Tatum changed his story during a subsequent interview at the police station. During that interview, when the officer asked Tatum why there was a video of him "running around downtown," Tatum recalled that he was with Young and "D.B.," who got "into an argument" with an "older, like white guy"— N.N. Tatum claimed Young or D.B. searched N.N.'s pockets and found the car keys to the car they stole. He described searching downtown on foot with Young, who clicked the key fob until they found the car.

Detective Ernesto Escobar was tasked with investigating the video recordings from different vantages in the downtown area to piece together the crime.[3] Those recordings were played for the jury. Detective Escobar described the video footage to the jury as follows:

> Q. [PROSECUTOR] Tell us what we're seeing at the top of the screen. A. [DETECTIVE ESCOBAR] The victim had walked into the street [after leaving the bar], backed up. Three suspects appeared to assault the victim, kick the victim, go through his pockets, and jump on the victim.
> . . . .
> Q. Now, tell us what we see here [in the zoomed-in version of the video]. A. That is when the victim had walked backwards into the street. The first suspect punches him. The second suspect punches him. They proceed to kick him. The defendant right now is observed over the victim going through his pockets.

---

[3] As Detective Escobar explained, "There are cameras downtown known as the Operation Downtown cameras," which are "placed strategically" to "record possible incidents of fights or criminal activity near the bar district area."

. . . .

Q. Based on your investigation were they working in concert, all three of them?  A. Yes.

Q. Were they working together?  A. Yes.

Q. Did each of them play a role in what we've seen?  A. Yes.

. . . .

Q. Now, I want you to track what the defendant is doing for the jury.  Okay?  Right now where is the victim?  A. On the ground unconscious.

Q. Say that again.  A. On the ground unconscious.

Q. And where is Mr. Tatum right now?  A. Bending over the body of the victim.

Q. At that time is he the only one out of the three bending over the body of the victim?  A. Yes.

Q. He wasn't administering CPR, was he?  A. No.

Q. What does it look like he's doing right there?  A. Going through [N.N.'s] pockets.

Q. And did somebody else join in?  A. Yes.

Q. Who joined in?  A. Fredrick [Young].

Q. And what were both of them doing?  A. Attempting to commit theft.

Q. But in terms of what they were doing specifically, what were they—what was taken from the victim?  A. The victim's keys to his vehicle.

Q. And based on your investigation where were the keys before they were taken?  A. In his pockets on his person.

Q. What do we see here after the keys were taken?  A. The assault continued.

Q. And then what's this third individual doing?  A. Checking on the victim.

Q. And the victim is unconscious; correct?  A. Correct.

Q. Now what do the three of them do?  A. They then leave.

Q. Did they leave together?  A. Yes.

According to Detective Escobar, minutes later on a different camera, Tatum and Young were recorded "running towards [N.N.'s] vehicle due to they had located it."  He described Tatum as wearing a large necklace and no shirt.  Specifically, Detective Escobar testified the video showed Tatum "run towards the car and jump into the car" and not "being picked up by Mr. Young" as Tatum claimed.

Although Tatum maintained he "didn't punch nobody" and he "was trying to stop the situation," the jury was able to weigh his claims against other testimony to the contrary, including Detective Escobar's opinion that his investigation failed to show Tatum "was a peacemaker." *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." (cleaned up)). Additionally, Tatum's statements to police show a pattern of changing the facts only when confronted with inconsistencies between his story and the physical evidence, which the jury could have considered as evidence supporting his convictions. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense."); *State v. Smith*, No. 07-1406, 2008 WL 3916768, at *3 (Iowa Ct. App. Aug. 27, 2008) ("A defendant's inconsistent statements are probative circumstantial evidence from which the jury may infer guilt.").

When the evidence and inferences drawn from it are viewed in the light most favorable to the State, sufficient evidence supports the jury's verdict. Accordingly, we affirm Tatum's conviction for robbery in the first degree.

## III. Competency Hearing

Tatum next claims the district court should have sua sponte ordered a competency evaluation during sentencing. *See* Iowa Code § 812.3(1) (2023) ("The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an

application under this section and the court finds that there are specific facts showing that a hearing should be held on that question."). "There is a presumption that a defendant is competent to stand trial, and the defendant has the burden to prove incompetence by a preponderance of the evidence." *State v. Lyons*, 16 N.W.3d 66, 71 (Iowa Ct. App. 2024). "Probable cause exists for a competency hearing when a reasonable person would believe that there is a substantial question of the defendant's competency." *State v. Einfeldt*, 914 N.W.2d 773, 779 (Iowa 2018).

To determine whether due process requires an inquiry into competency, courts consider: "(1) the defendant's irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competence to stand trial." *Lyons*, 16 N.W.3d at 71. The "ultimate question" before the court is "whether the defendant is prevented from 'appreciating the charge, understanding the proceedings, or assisting effectively in the defense.'" *Einfeldt*, 914 N.W.2d at 791 (Mansfield, J., concurring in part and dissenting in part) (quoting Iowa Code § 812.3(1)). We review Tatum's competency challenge de novo. *See State v. Brown*, 16 N.W.3d 288, 293, 295 (Iowa 2025).

Shortly after the verdict in December 2023, Tatum began filing a flurry of motions. In late January, defense counsel filed a motion to withdraw, alleging an irreconcilable conflict due to Tatum's filing of "pro se motions, pleadings, and appeals claiming, among other issues, that [counsel] was ineffective in his trial." The district court granted the motion and appointed attorney Jamie Deremiah to represent Tatum. On February 9, Tatum filed a waiver of counsel. Less than a week later, Tatum filed a motion for standby counsel.

A hearing took place on February 16. Tatum indicated he wanted to represent himself but would like standby counsel. The court questioned Tatum at length about his requests. Tatum reported his highest level of education was ninth grade. He stated he had been hospitalized for two weeks in 2021 and less than one week in 2023 for suicidal statements. Tatum stated he was not taking "any type of mental health medication" in 2023 or 2024 and he was not taking any medications "at this time" aside from ibuprofen. He had not been diagnosed with "any mental illness condition." The court advised Tatum about the role of defense counsel and explained the proceedings at issue. Tatum maintained he wished to proceed and represent himself with standby counsel. The court determined his decision was voluntary, knowing, and intelligent. The court then continued the hearing on Tatum's pending pro se motions and sentencing.

At the start of the next hearing, Tatum confirmed he still wished to exercise his right to represent himself. The court then began to address Tatum's motions. After hearing the parties' arguments, the court denied Tatum's claims that "the jury was improperly instructed" and he "didn't have a fair trial." The court also denied Tatum's request for the court to recuse itself. The court instructed Tatum that his claims of ineffective assistance of counsel must be raised in a postconviction-relief petition. Finally, the court denied Tatum's motion for new trial. The court directed Tatum he had "a right to appeal that and that's what [his] next step would be is to appeal whether or not [the court is] correct in [its] ruling." The court then indicated it would proceed to sentencing "at this time." Tatum then became upset, berated his standby counsel, and asked to "plead the Fifth."

The court adjourned the hearing, and Tatum was taken out of the courtroom. On the record, the court advised standby counsel and the prosecutor it had "concerns" whether Tatum understood what was going on based upon his "rambling comments." The discussion continued, and the court equivocated whether it could order a competency hearing. Standby counsel agreed Tatum may not be able to effectively assist in his defense, considering the hearing "was not how [it] was supposed to go in terms of meetings that [he] had with Mr. Tatum."

In any event, the hearing was continued several more times, during which the court was able to evaluate in detail whether Tatum's comments were indicative of his incompetence. During three further hearings, the concern turned from Tatum's competence to his stall tactics. On March 20, the court granted Tatum's motion to continue, granted his request for new standby counsel, and appointed attorney Erin Carr.

The hearing resumed on March 29, at which time the court granted another continuance based on Tatum's new request that attorney Carr be appointed full-time counsel. The prosecutor expressed "frustration from the State's perspective because this is really gamesmanship by the defendant, because he wants a lawyer, he doesn't want a lawyer, he wants a standby, he doesn't want a standby, he wants a new standby, he gets a new standby, now he wants a lawyer." The State noted it was ready to proceed with sentencing. The court explained it would grant the continuance to give attorney Carr more time to determine "if he feels there's something that the Court needs to look at with regard to previous motions that the Court has already considered and reviewed."

The hearing resumed on April 10. At the outset, attorney Carr requested Tatum be allowed to address something "fairly short" with the court. Tatum "demand[ed] that all court proceedings pertaining to the case be stopped" until he received transcripts and written rulings on his post-trial motions. Attorney Carr declined to comment on Tatum's request. The court indicated Tatum would not receive the transcripts "today" but advised he could file an appeal once his sentencing was complete at which time he would receive the transcripts. Tatum became upset and cursed at the court, requiring the court to remove Tatum from the courtroom.

After a recess, the court addressed counsel outside Tatum's presence. Attorney Carr advised that Tatum was refusing to be present for sentencing. The court then detailed the prior proceedings over the past several months, noting in part:

> I think one of the problems that Mr. Tatum has had and what has caused much of the delay in this matter is his not understanding how the jury convicted him in this matter. That seems to be a running theme not only in his written filings that he has done pro se but also in comments to the Court.
> The Court addressed that motion back on March 8th and on the record indicated to Mr. Tatum that the Court found that the greater weight of the evidence supported the verdict of the jury in this matter.

The court proceeded to address the pro se motions Tatum had filed and the reasons for the court's prior rulings on those motions. The court asked attorney Carr if he "want[ed] to speak to those motions," to which Carr declined. The court continued,

> That brings us up to today. So we started this hearing probably about 45 minutes to an hour ago. I indicated during that matter that Mr. Tatum became disruptive when he did not like the

comments from the Court.  The Court had Mr. Tatum removed.  It was obvious we were not going to get anywhere in the agitated state that he was in.

Quite frankly, the Court could probably find him in contempt based upon the comments that he made towards me. I think he called me a "bitch" on the record.  I'm not going to do that at this point in time.  I told Mr. Tatum we were going to take a break and let him cool off and then we would come back.

. . . .

There's been no question that throughout these matters—and we have had to continue this several times.  This would be probably the second or third time that Mr. Tatum has become upset and disruptive in the courtroom to the point where the hearings have been continued because of his conduct, or in this case we have adjourned to try to allow him to cool off before we proceed with the matter.

And as the Court has already indicated, Mr. Carr, his counsel, has indicated he's refusing to appear for sentencing today.

. . . .

The Court felt that after a period of time Mr. Tatum would be willing to proceed.  As has been indicated on the record already, both by his attorney and by Deputy Bentley, that when offered the opportunity to participate in the sentencing, either in person or by a Zoom link in the courthouse, he has refused to participate.

So the Court, based upon that, is going to proceed with sentencing in this matter based upon Mr. Tatum's conduct prior to sentencing, finding that he was disruptive and therefore he should have been removed, and his refusal now to participate.  He's been afforded every opportunity to participate in this matter and he has chosen by his actions not to participate, and so the Court is going to proceed with sentencing at this time.

Upon determining neither attorney Carr nor the prosecutor had anything to add, the court proceeded to sentencing.

Because we presume a defendant is competent unless proven otherwise, Tatum has the burden of establishing incompetence.  *See Lyons*, 16 N.W.3d at 71. Upon our de novo review of the record, we do not find Tatum met this burden.  In other words, we do not find a reasonable person would have doubted Tatum's competence at the time of sentencing.  *See State v. Irving*, No. 21-1839, 2023 WL 1808507, at *5 (Iowa Ct. App. Feb. 8, 2023).  Indeed, Tatum's own attorney at the

time sentencing took place did not question his competence. *See State v. Boon*, No. 23-1328, 2024 WL 5153536, at *2 (Iowa Ct. App. Dec. 18, 2024) ("Because Boon's counsel was 'best situated to know whether [his] impairments compromise the defense of the case,' we also consider the fact that his attorney failed to raise the issue." (alteration in original) (quoting *Einfeldt*, 914 N.W.2d at 780). And the presentence investigation report (PSI) documented no significant mental-health issues, aside from Tatum's report of having depression and anxiety. *See State v. Morrison*, No. 21-1647, 2022 WL 5067124, at *1 (Iowa Ct. App. Oct. 5, 2022) (finding no reason to alert a reasonable person to doubt the defendant's competency at the sentencing hearing where the PSI noted his "mental-health difficulties, including a history of PTSD, anxiety, depression and schizophrenia"). Under these circumstances, neither Tatum's requests for clarification nor his pro se motions "raised sufficient misgivings about his mental capacity that the court needed to schedule a competency hearing." *Irving*, 2023 WL 1808507, at *5. Accordingly, the court did not violate Tatum's due process right.

**AFFIRMED.**